**This order is SIGNED.**





**Dated: June 30, 2017**

**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| IN RE: KYLE BRINGHURST AND CARRIE BRINGHURST,<br><br>Debtors. | |
| UTAH BEHAVIOR SERVICES, INC., a Utah Corporation;<br><br>Plaintiff,<br><br>v.<br><br>KYLE BRINGHURST,<br>Defendant. | Bankruptcy No. 16-28246<br><br>Chapter 7<br><br>Adversary Case No. 16-02151<br><br>Hon. William T. Thurman |

### MEMORANDUM DECISION

Before the Court is the *Motion for Summary Judgment* (the "Motion") filed May 16, 2017, by Defendant, Kyle Bringhurst ("Bringhurst" or "Defendant") in the above-styled adversary proceeding.[1] This Motion arises in connection with the complaint of Plaintiff, Utah Behavior Services, Inc., a Utah Corporation ("UTBS" or "Plaintiff"), objecting to the dischargeability of certain debts of Bringhurst pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4), and

---

[1] Adversary Case No. 16-02151, Docket No. 22. All future references to the Docket will be to Adversary Case No. 16-02151, unless otherwise specified.

(a)(6)[2] and requesting injunctive relief.[3] Through the Motion, Bringhurst seeks summary judgment in his favor on all five claims brought by UTBS.

On June 29, 2017, the Court held a hearing on the Motion (the "Hearing"). At the Hearing, Blake T. Ostler appeared on behalf of UTBS, Geoffrey L. Chesnut appeared on behalf of Bringhurst, and any other appearances were noted on the record.

After considering the relevant filings in this adversary proceeding including the Motion, the notice of hearing filed in connection with the Motion,[4] the opposition to the Motion filed by UTBS (the "Objection"),[5] and Bringhurst's reply to the Objection;[6] after considering the oral arguments of counsel; and after conducting an independent review of applicable law, the Court is prepared to rule.[7]

---

[2] All subsequent statutory references are to title 11 of the United States Code unless otherwise indicated.

[3] Docket No. 1, Complaint. The Court notes that that heading of the Complaint requests relief pursuant to § 523(a)(2) but the Complaint fails to list a claim for relief under § 523(a)(2) and the Motion does not request summary judgment on a claim under § 523(a)(2). Plaintiff argues, in the opposition to the Motion, that failure to plead a cause of action under § 523(a)(2)(A) was a scriveners error. Plaintiff has filed a Motion for Leave to file Amended Complaint [Docket No. 28] and that matter is set for hearing before this Court on July 20, 2017.

[4] Docket No. 23, Notice and Opportunity for Hearing on Motion for Summary Judgment.

[5] Docket No. 31, Memorandum in Opposition to Motion for Summary Judgment.

[6] Docket No. 37, Reply Memorandum. Plaintiff also filed a Motion to Strike [Docket No. 32]. The Court does not need to undertake a detailed analysis of the Plaintiff's motions to strike because even if the Court granted them and did not consider the Statements of Undisputed Facts in question, the Court's decision herein would remain unchanged.

[7] The following discussion shall constitute findings of fact and conclusions of law under Fed.R.Bankr.P. 7052 and Fed.R.Civ.P. 52(a) for the limited purpose of ruling on the Motion. Any of the findings of fact herein are deemed, to the extent appropriate, to be conclusions of law, and any conclusions of law are similarly deemed, to the extent appropriate, to be findings of fact, and they shall be equally binding as both.

I.    **JURISDICTION**

The Court's jurisdiction over this adversary proceeding is properly invoked pursuant to

28 U.S.C. § 1334 and § 157(b)(1) except as hereinafter discussed. The matter herein, excluding

counts 4 and 5, are determined to be core proceedings within the definition of 28 U.S.C.

§ 157(b)(2)(I), and the Court may enter a final order. Venue is appropriate under 28 U.S.C.

§ 1409.

II.    **FACTUAL BACKGROUND**

For the purpose of ruling on the Motion, the Court finds that the following facts are not in

genuine dispute:

On November 4, 2013, Bringhurst began his employment at UTBS as a part-time

consultative and quality assurance employee.[8] As a part-time employee, Bringhurst was only

provided with HIPAA protected information in his responsibilities and only had access to what a

supervisor would have access to.[9] During this period, Bringhurst also worked for Wasatch

Mental Health as a Program Manager receiving approximately $94,400.00 in total

compensation.[10]

Bringhurst and his family lived in Spanish Fork, Utah, and spent upwards of $15,000.00

investing in their home.[11] During the weekend of March 21, 2014, Bringhurst and his family

were in St. George, Utah for a child's athletic competition.[12] Natalie Whatcott and Sarah

---

[8] Defendant's Statement of Undisputed Material Facts, ¶ 47.

[9] Defendant's Statement of Undisputed Material Facts, ¶ 48, 49.

[10] Defendant's Statement of Undisputed Material Facts, ¶ 50.

[11] Defendant's Statement of Undisputed Material Facts, ¶ 51.

[12] Defendant's Statement of Undisputed Material Facts, ¶ 52.

Sanders, both Co-CEO's for UTBS, had a scheduled meeting with Southwest Behavioral Health Center ("Southwest") on Monday March 24, 2014, in St. George.[13] Whatcott and Sanders discovered Bringhurst was in town, requested information from Bringhurst, and asked him to participate in the meeting with Southwest.[14] A contract with Southwest was successfully negotiated.[15] Thereafter, Whatcott and Sanders began serious negotiations with Bringhurst regarding his employment with UTBS.[16]

Bringhurst informed Whatcott and Sanders that he was interested in relocating to St. George with his family.[17] After several negotiations, the parties agreed that Bringhurst would move to St. George with the help of UTBS.[18]

Bringhurst was tasked with expanding UTBS services in St. George, Washington, Utah and the surrounding areas.[19] Whatcott, Sanders, and Bringhurst discussed a profit share and other benefits for the growth of UTBS in St. George.[20] Bringhurst would not have a legal ownership of UTBS.[21]

---

[13] Defendant's Statement of Undisputed Material Facts, ¶ 53.

[14] Defendant's Statement of Undisputed Material Facts, ¶ 54.

[15] Defendant's Statement of Undisputed Material Facts, ¶ 55.

[16] Defendant's Statement of Undisputed Material Facts, ¶ 56.

[17] Defendant's Statement of Undisputed Material Facts, ¶ 57.

[18] Defendant's Statement of Undisputed Material Facts, ¶ 48.

[19] Defendant's Statement of Undisputed Material Facts, ¶ 59.

[20] Defendant's Statement of Undisputed Material Facts, ¶ 60.

[21] Defendant's Statement of Undisputed Material Facts, ¶ 60.

To assist with his move to St. George, Bringhurst requested a signing bonus to cover the cost of his tuition assistance received from his previous job at Wasatch Mental Health.[22] UTBS paid Bringhurst $20,000.00 to cover certain moving and living expenses and also provided Bringhurst with an American Express card to cover certain expenses.[23] The parties dispute whether Bringhurst had authorization to use this American Express card for personal expenses.

Bringhurst signed a compensation agreement with UTBS and began travelling to St. George weekly to open the new UTBS location, open new client accounts, and employ new staff.[24] Bringhurst also moved his family to St. George.[25] In his new position with UTBS, Bringhurst had managerial and officer level authority but was not authorized to obligate UTBS with respect to bank loans and contracts.[26] The parties dispute whether Bringhurst assumed certain authorities formerly exclusively delegated to Whatcott and Sanders.

On June 15, 2014, Bringhurst signed a confidential nondisclosure agreement and a nonsolicitation agreement with UTBS.[27] This agreement was similar to ones given to other employees of UTBS.[28] Bringhurst was eventually given the title of chief clinical officer.[29]

---

[22] Defendant's Statement of Undisputed Material Facts, ¶ 61

[23] Defendant's Statement of Undisputed Material Facts, ¶ 63

[24] Defendant's Statement of Undisputed Material Facts, ¶ 64.

[25] Defendant's Statement of Undisputed Material Facts, ¶ 64.

[26] Defendant's Statement of Undisputed Material Facts, ¶ 65.

[27] Defendant's Statement of Undisputed Material Facts, ¶ 69, 71.

[28] Defendant's Statement of Undisputed Material Facts, ¶ 69, 70.

[29] Defendant's Statement of Undisputed Material Facts, ¶ 72.

Bringhurst became concerned with certain financial billings of UTBS and contacted the State of Utah and UTBS's insurance company.[30] Shortly thereafter, Bringhurst terminated his employment with UTBS on February 25, 2015, and his last day was February 27, 2015.[31] Bringhurst immediately began employment at Summit Behavior Services with Wendell Anderson, also a former employee of UTBS.[32] Summit Behavior Services is a competitor of UTBS.[33]

UTBS filed a state action against Bringhurst and Anderson and received an injunction on July 7, 2015.[34] The state court issued a memorandum decision and made certain findings. Specifically, that "Bringhurst was in a unique position of trust and responsibility . . . . Both Bringhurst and Anderson breached their duties of loyalty and their fiduciary duty to [UTBS]."[35] The state court also found that Bringhurst removed confidential information from UTBS to start a competing business which "violated both an express term of [his] employment contract, and [his] inherent fiduciary obligations."[36] Bringhurst was ordered to give certain documents back to UTBS and to refrain from competing or soliciting clients from UTBS in violation of his employment contract.[37]

---

[30] Defendant's Statement of Undisputed Material Facts, ¶ 74, 75.

[31] Defendant's Statement of Undisputed Material Facts, ¶ 81.

[32] Defendant's Statement of Undisputed Material Facts, ¶ 82.

[33] Defendant's Statement of Undisputed Material Facts, ¶ 82.

[34] Defendant's Statement of Undisputed Material Facts, ¶ 95.

[35] Defendant's Statement of Undisputed Material Facts, ¶ 97.

[36] Defendant's Statement of Undisputed Material Facts, ¶ 97.

[37] Defendant's Statement of Undisputed Material Facts, ¶ 97.

Bringhurst and his spouse filed for relief under Chapter 7 on September 16, 2016.[38]

UTBS filed this adversary case on October 11, 2016. UTBS asserts that it has suffered damages

in the amount of $55,374.08 ($29,029.08 used on the America Express Card + $20,000.00 for

Bringhurst's moving expenses + $6,345.00 in tuition reimbursement) plus additional damages.

## III.   DISCUSSION

### A.   Summary Judgment Standards

In *Becker v. Bateman*, the United States Court of Appeals of the Tenth Circuit stated:

> Summary judgment is appropriate when "the movant shows that there is
> no genuine dispute as to any material fact and the movant is entitled to
> judgment as a matter of law." Fed.R.Civ.P. 56(a). "An issue is 'genuine' if
> there is sufficient evidence on each side so that a rational trier of fact
> could resolve the issue either way." *Adler v. Wal–Mart Stores, Inc.*, 144
> F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the
> substantive law it is essential to the proper disposition of the claim." *Id.*
> Put differently, "[t]he question . . . is whether the evidence presents a
> sufficient disagreement to require submission to a jury or whether it is so
> one-sided that one party must prevail as a matter of law." *Shero v. City of
> Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quotation omitted). "On
> summary judgment the inferences to be drawn from the underlying facts
> must be viewed in the light most favorable to the party opposing the
> motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
> 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quotation omitted).[39]

With these guiding principles in mind, the Court turns to the Motion.

### B.   Legal Standard Under Section § 523(a)(4)

Debts arising from "fraud or defalcation while acting in a fiduciary capacity,

embezzlement, or larceny" are excepted from the general discharge under 523(a)(4).[40]

---

[38] Case No. 16-02151, Docket No. 1.

[39] *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013). *See also Bird v. West Valley
City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (summary judgment standard); *Obermeyer Hydro
Accessories, Inc. v. CSI Calendering, Inc.*, 852 F.3d 1008, 1014 (10th Cir. 2017) (same).

[40] 11 U.S.C. § 523(a)(4).

### 1. Fraud or defalcation while acting in a fiduciary capacity

To prevail under § 523(a)(4), a creditor must establish three elements: (1) the debt resulted from a fiduciary's fraud or defalcation under an express or technical trust involving the entrusting of money or other property to a fiduciary for the benefit of another; (2) the debtor acted in a fiduciary capacity with respect to the trust; and (3) the transaction in question was a "defalcation" within the meaning of bankruptcy law.[41]

The Tenth Circuit has taken a very narrow view of the concept of fiduciary duty under § 523(a)(4).[42] The court must find that the money or property on which the debt at issue was based was entrusted to the debtor.[43] An express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4).[44] As stated by Judge Nugent in *In re Bratt*,

> As a matter of bankruptcy law, § 523(a)(4) contemplates a trust relationship that is narrower than the general duty of one in a fiduciary relationship. It may be an express trust, defined in a written or oral agreement that created the relationship and identified the property held in trust (the *res* ), the trustee, and the trustee's duties with respect to the *res.* Or, it may be a technical trust that is imposed by statute. The statute must define the *res,* spell out the fiduciary duties of the party to whom the trust property is entrusted, and the trust must have arisen on the *res* before the debtor took the action that created the debt. The trust relationship must be imposed by the law rather than implied from it. Unless the trust is an express or technical one, other relationships from which general fiduciary duties might be implied by state law principles will not support a

---

[41] *Fowler Brothers v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1996).

[42] *Id.*

[43] *Id. See also Van De Water v. Van De Water (In re Van De Water)*, 180 B.R. 283, 289–90 (Bankr. D. N.M. 1995) (denying a discharge under § 523(a)(4) for breach of fiduciary obligations wherein "the debtor had been entrusted with property of another and then abused that trust.").

[44] *In re Young*, 91 F.3d at 1371 (citing *Romero v. Romero (In re Romero)*, 535 F.2d 618, 621 (10th Cir. 1976)).

defalcation claim under § 523(a)(4). For example, a general attorney-client relationship has been found insufficient to establish the fiduciary relationship required under § 523(a)(4). Neither is a partnership relationship unless there is an express agreement or a state law creating a trust relationship.[45]

The creditor has the burden of persuasion, which must be met by a preponderance of the evidence.[46] Before addressing all elements required under § 523(a)(4), the Court will first turn to the threshold issue of whether Bringhurst was a "fiduciary" for § 523(a)(4) purposes.

The Court finds that there is no genuine issue of fact as to whether there was an "express or technical trust" established between Bringhurst and UTBS. The state court found that Bringhurst was a fiduciary of UTBS for injunctive relief purposes based on his employment contract; but as Bringhurst argues, the standard for such determination under § 523(a)(4) is different.[47] An "express or technical trust" cannot be implied or assumed based on Bringhurst's actions while employed at UTBS. The parties did not have an express agreement creating a trust relationship and state law does not impose a trust relationship between the parties. Accordingly, summary judgment is appropriate on cause of actions one, two and three as to claims asserted by UTBS under §523(a)(4) for fraud or defalcation while a fiduciary and those claims should be dismissed.

---

[45] *In re Bratt*, 489 B.R. 414, 425-26 (Bankr. D. Kan. 2013).

[46] *Grogan v. Garner*, 498 U.S. 279, 290-91 (1991).

[47] *McDowell v. Stein*, 415 B.R. 584, 595 (S.D. Fla. 2009) ("[w]hile the fact that a relationship is fiduciary under state law does not necessarily mean that it is a fiduciary relationship within the meaning of § 523(a)(4), if state law imposes the duties of a trustee on a party, then the party is a fiduciary for purposes of § 523(a)(4).") (citing *Quaif v. Johnson*, 4 F.3d 950, 953 (11th Cir. 1993); *In re Regan*, 477 F.3d 1209, 1211 (10th Cir. 2007)).

2. Embezzlement

Embezzlement under § 523(a)(4) is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come."[48] "The elements required to prove embezzlement are: (1) entrustment, (2) of property (3) of another (4) that is misappropriated (used or consumed for a purpose other than for which it was entrusted), (5) with fraudulent intent."[49] The fraudulent intent required for embezzlement is the "intention to steal."[50] Embezzlement also "requires fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud."[51]

The Court finds that there is a genuine issue of material fact as to whether Bringhurst used the American Express card for a purpose other than for which it was entrusted. Bringhurst argues he was authorized to use the American Express card for personal use. This assertion by Bringhurst is based on handwritten negotiations and his understanding. UTBS argues the American Express card was only authorized for company expenses. UTBS states that Bringhurst's handwritten notes did not give him authority to use the company American Express card for his personal expenses.

Bringhurst's intent is unclear, although there seems to be very little indication of fraud as Bringhurst never took any steps to hide the fact from UTBS that he was using the company

---

[48] *Hernandez v. Musgrave (In re Musgrave)*, No. AP. 09-01006, 2011 WL 312883, at *5 (10th Cir. BAP Feb. 2, 2011) (citing *Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir. 1988)).

[49] *Id.* (citing *Tulsa Spine Hosp., LLC v. Tucker (In re Tucker)*, 346 B.R. 844, 852 (Bankr.E.D. Okla. 2006)).

[50] *Chenaille v. Palilla (In re Palilla)*, 493 B.R. 248, 252 (Bankr. D. Colo. 2013).

[51] *Hill v. Putvin (In re Putvin)*, 332 B.R. 619, 627 (10th Cir. BAP 2005) (citation omitted).

American Express card and sent reimbursement receipts to UTBS for the nine months he used the card. There is an issue of fact as to whether Bringhurst knew that the American Express card statements would be audited after his departure so that he could avoid responsibility for the alleged misuse of the American Express card. Accordingly, the Court denies summary judgment on cause of action two for embezzlement under § 523(a)(4).

### 3. Larceny

The Tenth Circuit adheres to the common-law definition of larceny.[52] Larceny under § 523(a)(4) is the "felonious stealing, taking and carrying, leading, riding, or driving away another's personal property, with intent to convert it or to deprive the owner thereof."[53] The difference between larceny and embezzlement is that, "with embezzlement, the debtor initially acquires the property lawfully whereas, with larceny, the property is unlawfully obtained."[54]

The Court finds that summary judgment is appropriate under the claim of larceny as there is no genuine issue of material fact supporting the required finding that Bringhurst acquired property of UTBS, the American Express card, by unlawful means. The parties do not dispute the fact that UTBS lawfully gave Bringhurst the American Express card. Accordingly, the Court grants summary judgment on cause of action two for larceny under § 523(a)(4) and those claim should be dismissed.

---

[52] *Hand v. United States*, 227 F.2d 794, 795 (10th Cir. 1955).

[53] *United States v. Smith*, 156 F.3d 1046, 1056 (10th Cir. 1998) (citation omitted).

[54] *Wonjoong Kim v. Hyungkeun Sun*, 535 B.R. 358, 367 (10th Cir. BAP 2015) (citation omitted).

### C.  Legal Standard Under Section § 523(a)(6)

Debts arising from "willful and malicious injury by the debtor to another entity or to the property of another entity" are excepted from the general discharge.[55] Nondischargeability under this subsection requires that the debtor's actions be *both* willful and malicious.[56] The "willful" element requires both an intentional act and an intended harm; an intentional act that leads to an unintended harm is not sufficient.[57] For a debtor's actions to be malicious, they have to be intentional, wrongful, and done without justification or excuse.[58] The Tenth Circuit applies a subjective standard in determining whether a defendant desired to cause injury or believed the injury was substantially certain to occur.[59] Evidence of the debtor's state of mind may be inferred from the surrounding circumstances.[60]

---

[55] 11 U.S.C. § 523(a)(6).

[56] *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) (stating that there must be both a "willful act" and "malicious injury" to establish nondischargeability under Section 523(a)(6)); *Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley)*, 235 B.R. 651, 655 (10th Cir. BAP 1999) (stating, "[i]n the Tenth Circuit, the phrase 'willful and malicious injury' has been interpreted as requiring proof of two distinct elements - that the injury was both 'willful' and 'malicious.'").

[57] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

[58] *Fletcher v. Deerman (In re Deerman)*, 482 B.R. 344, 369 (Bankr. D. N.M. 2012).

[59] *Via Christi Regional Medical Ctr. v. Englehart (In re Englehart)*, 229 F.3d 1163 (10th Cir. 2000) ("[T]he 'willful and malicious injury' exception to dischargeability in § 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur.").

[60] *Nat'l Labor Relations Board v. Gordon (In re Gordon)*, 303 B.R. 645, 656 n. 2 (Bankr. D. Colo. 2003) (it is "absolutely permissible to infer . . . actual intent to cause injury from . . . evidentiary facts") (citations omitted).

The Court finds that summary judgment is not appropriate at to cause of action one as there is a genuine issue of material fact regarding whether Bringhurst's conduct was intended to harm UTBS. There is a genuine issue of material fact as to whether Bringhurst knew or was substantially certain his actions would cause harm to UTBS. UTBS alleges that it suffered harm and damages by Bringhurst's actions in leaving the company, starting his own company and reporting certain billing issues to the State of Utah and insurance companies which resulted in a month long investigation. It is unclear whether Bringhurst was willful and malicious in his actions. Accordingly, the Court denies summary judgment on cause of action one under § 523(a)(6).

### D.  Injunctive Relief

UTBS has requested permanent injunctive relief against Bringhurst in this Court to prevent Bringhurst from using UTBS's confidential and trade secret information. Bringhurst states that UTBS's claims are moot because the state court granted injunctive relief which expired after a period of time which the parties agreed has expired. The Court concludes that summary judgment is not appropriate under claims four and five as UTBS's is seeking different relief in this Court than it sought in state court and therefore the claims cannot be rendered moot.

This ruling is without prejudice to the Plaintiff seeking appropriate relief in the state court. Further, the Court determines that the jurisdictional link to this adversary case is tenuous for seeking injunctive relief. It is clearly not a core proceeding and at best, a related to claim. However, since the state court has already ruled on injunctive relief, it is more appropriate for the state court to determine what type of further injunctive relief is proper. As jurisdiction is a threshold issue which the Court can raise on its own, the Court does and determines it lacks jurisdiction on Counts four and five.

Accordingly, this Court determines it lacks jurisdiction over Counts four and five, which is consistent with a granting of the Defendant's request for summary judgment.

## IV.    CONCLUSION

The Court concludes summary judgment is appropriate on cause of actions one, two and three as to claims asserted by UTBS under § 523(a)(4) and under the claim of larceny. Summary judgment is also appropriate on counts four and five for lack of jurisdiction. Summary judgment is not appropriate under cause of action one under § 523(a)(6) and cause of action two for embezzlement under § 523(a)(4).

The Court directs counsel for Defendant to submit a proposed form of order consistent with this Memorandum Decision for the Court's consideration to sign.

## <u>DESIGNATION OF PARTIES TO RECEIVE NOTICE</u>

Service of the foregoing **MEMORANDUM DECISION** shall be served to the parties and in the manner designated below:

**By Electronic Service:** ECF LIST

- Geoffrey L. Chesnut      gchesnut@expresslaw.com, courtmailrr@expresslaw.com
- Tyler J. Moss      tylermoss22@gmail.com
- Blake T. Ostler      supes00@gmail.com, kierstenslade@gmail.com
- Thomas H. Richards      tomrichards9@gmail.com
- Andres x2Diaz      courtmailrr@expresslaw.com,
  redrocklegalservicesecf@gmail.com;r54003@notify.bestcase.com

**By U.S. Mail/ Manual Notice List**:

None.